**SHOTKIN v. GENERAL ELECTRIC CO.
et al.**
No. 3604.

United States Court of Appeals
Tenth Circuit.

Dec. 2, 1948.

Rehearing Denied Dec. 31, 1948.

Bernard M. Shotkin pro se.

Donald S. Stubbs, of Denver, Colo. (Irving Hale, Jr. and Lewis, Grant, Newton, Davis & Henry, all of Denver, Colo., on the brief), for appellees, L. A. Goalby and Westinghouse Electric Corporation.

Henry W. Toll, of Denver, Colo. (Grant, Shafroth & Toll, of Denver, Colo., on the brief), for appellees, General Electric Co., Edison General Electric Appliance Co., now Hotpoint, Inc., and Hendrie & Bolthoff Co.

Winston S. Howard and Pershing, Bosworth, Dick & Dawson, all of Denver, Colo., for appellees, Mine & Smelter Supply Co., O. H. Johnson, and John D. Nicholson.

Merrill A. Knight and Schaetzel & Knight, all of Denver Colo., for appellee New England Electric Co.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This was an action instituted in the United States Court for Colorado by Bernard M. Shotkin, as trustee for his minor children against General Electric Company, General Electric Supply Company, Westinghouse Electric & Manufacturing Company, Westinghouse Electric Supply Company, Thomas A. Edison, Inc., Edison General Electric Appliance Company, and approximately seventy-five other corporations and individuals. Drawn without the aid of counsel, the amended complaint alleged that the action was filed under sections 1, 2, 3, 4, 7, and 15 [8] of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–4, 7, 15 note, sections 14 and 16 of the Clayton Act, 15 U.S.C.A. §§ 24, 26, and the Robinson-Patman Act, 15 U.S.C.A. §§ 13, 13a, 13b, 21a. It further charged in general language that fluorescent and incandescent lamps, fixtures, apparatuses, appliances, devices, parts and materials were manufactured by various of the defendants in different localities and were shipped and distributed through the channels of interstate commerce; that the defendants controlled and monopolized the manufacture, sale, and distribution of such commodities; that trading under the names Edison Light & Power Company, Dison Power & Light Company, and Chicago Wholesale Merchandise Company, plaintiff was engaged at Denver, Colorado, in the sale as wholesale distributor of electric lamps, light fixtures, apparatuses, appliances, devices, and other electric goods; and that most of his business was in interstate commerce. The complaint further alleged that the defendant Westinghouse Electric & Manufacturing Company agreed to furnish plaintiff lamps at the highest distributor's discount for sale and distribution in the course of his business in Denver; that such defendant did furnish plaintiff lamps for a period of time; that the defendants entered into a combination or conspiracy to drive plaintiff out of business, with the intent to monopolize or attempt to monopolize a part of the interstate trade in fluorescent and incandescent lamps and fixtures originating in Denver; that as part of such combination or conspiracy or as the result thereof, the defendant Westinghouse Electric & Manufacturing Company ceased to furnish lamps to plaintiff and thereafter refused to furnish them to him; that the effect of driving him out of business in that manner would be substantially to lessen competition and create a monopoly in the sale of lamps to the great injury of the public; and that the defendants were discriminating against plaintiff. The complaint contained allegations respecting the decree entered against some of the defendants in a civil action previously pending in the United States Court for New Jersey

but plaintiff was not a party to the action and had no personal interest in its subject-matter. And the complaint contained further allegations relating to a criminal prosecution against some of the defendants in the United States Court for Illinois, but that was long prior to the time plaintiff entered business at Denver and it had no bearing whatever upon any justiciable issue appropriate for determination in this case. The prayer was for injunctive relief and treble damages. The court dismissed the action for failure of the amended complaint to state a claim for which relief could be granted, and plaintiff appealed.

■ The general principles of the common law relating to contracts for the restriction or suppression of competition in the markets, agreements to fix prices, concerts to divide marketing territories, understandings to apportion customers, meeting of minds to restrict production, unity of purpose to furnish inferior products, and other like practices which tend to raise prices or otherwise take from buyers or consumers the advantages which accrue to them from free competition in the markets are familiar to all and therefore do not call for elaboration here. But the resulting restraints of trade were not penalized and they did not give rise to any actionable wrong. The Sherman Act, approved July 2, 1890, 26 Stat. 209, 15 U.S.C.A. §§ 1–7, 15 note, took its origin from that common-law background, and its primary purposes were more effective protection of the public from the evils of restraints on the competitive system. It extended the inhibition to any combination or conspiracy, whatever its form, having injurious effects of that kind upon the competitive system, and it provided both public and private remedies for the injuries flowing from the restraints. United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 46 L.R.A. 122, affirmed 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136; Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734; Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044.

■ Founded upon these broad concepts of public policy, the Act is limited in operative scope and effect to combinations, agreements, or concerts which tend to prejudice the public interest by unduly restricting competition or unduly obstructing the due course of trade, or which because of their evident purpose or inherent nature injuriously restrain trade in the competitive markets. Wilder Manufacturing Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520, Ann. Cas.1916A, 118; Ramsay Co. v. Associated Bill Posters of United States and Canada, 260 U.S. 501, 43 S. Ct. 167, 67 L.Ed. 368; United States v. American Linseed Oil Co., 262 U.S. 371, 43 S.Ct. 607, 67 L.Ed. 1035; Paramount Famous Lasky Corp. v. United States, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145. A common form of such combination, agreement, or concert is one having for its purpose or tendency the raising or fixing of prices, or one having for its purpose or tendency the dividing of territories, or one having for its purpose or tendency the apportionment of customers, or one having for its purpose or tendency the controlling or narrowing of outlets in order to raise or maintain prices.

■ In determining whether a contract, combination, or concert constitutes restraint of trade or commerce in violation of the Act, the intention of the parties may or may not be material, depending on whether the necessary effect of the agreement or concert or acts done is to directly restrain such trade or to create a monopoly. A specific intent to restrain such trade or commerce or to build up a monopoly in order for an agreement or concert to come within the scope of the Act is not always necessary. Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941. But regardless of the intent of the parties, if the inherent tendency of the combination, agreement, or concert is substantially to lessen, hinder, or suppress competition in the channels of the trade or commerce, it comes within the sweep of the Act. Fashion Originators' Guild v. Federal Trade Commission, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949.

■ It is essential to recovery in an action of this kind that plaintiff allege and prove two things, a violation of the Act,

and damages to plaintiff proximately resulting from the acts and conduct of the defendants which constitute the violation of the Act. Injury to plaintiff, of itself and alone, is not sufficient to warrant a civil action of this nature for injunctive relief and damages. There must be harm to the general public in the form of undue restriction of trade and commerce as the result of the wrongful contract, combination, or concert. Wilder Manufacturing Co. v. Corn Products Refining Co., supra; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885. The injury to the public need not be nationwide in geographical scope. If it involves monopolistic effect upon interstate commerce, it is enough even though it be narrow in geographical extent. Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996; William Goldman Theatres, Inc. v. Loew's, Inc., 3 Cir., 150 F.2d 738, Id., 3 Cir., 164 F.2d 1021, certiorari denied, 334 U.S. 811, 68 S.Ct. 1016. But it must injuriously affect public interest, and the effect must be appreciable.

■ The amended complaint in this case alleged in very general language that the defendants combined and conspired to restrain trade and commerce in the manufacture, sale, and distribution of fluorescent and incandescent lamps, fixtures, appliances, devices, parts, and materials; that they fixed prices; and that they stifled competition. The pleading further alleged in general terms that the action of the defendant Westinghouse Electric & Manufacturing Company in discontinuing to furnish plaintiff lamps and in refusing further to furnish lamps to him was a part of such conspiracy or was in furtherance of it. And it further alleged in equally general terminology that the effect of such refusal to furnish lamps to plaintiff was substantially to lessen competition and to create a monopoly. But these were general allegations in the nature of conclusions, without any averment of specific acts on the part of the defendants from which it could be determined as a matter of law that the defendants did in fact violate the Act with resulting damages to plaintiff. The complaint did not allege that the defendants combined and conspired to refrain from competing with each other in the manufacture, sale, and distribution of the enumerated commodities. It did not allege that the defendants conspired to raise prices. It did not charge that they combined to divide trade territory. It failed to allege that they conspired to apportion customers. It did not aver that they agreed to furnish the public commodities of inferior quality. And it was barren of any charge that the defendants engaged in any trade practices of that kind in furtherance of a combination or conspiracy. While it was alleged that the refusal to furnish merchandise to plaintiff for sale in connection with the conduct of his business was in furtherance of the conspiracy and that the public was injured, it was not charged generally or specifically that as the result of that refusal the prices of such merchandise were enhanced or that the volume thereof in the competitive markets was diminished. In other words, the complaint failed to allege facts from which it could be determined as a matter of law that a combination or conspiracy was entered into which brought about an increase in prices to the consuming public, a diminution in the volume of merchandise in the competitive markets, a deterioration in the quality of the merchandise available in the channels of commerce, or any other like evil consequence in the free flow of interstate commerce. Instead, the pleading bore clear internal indications of a personal grievance on the part of plaintiff based solely and exclusively upon the declination of the defendant Westinghouse Electric & Manufacturing Company further to transact business with him as an outlet for its manufactured merchandise, with no evil consequence to the consuming public. During all of the time referred to in the amended complaint, the defendant General Electric Company and its related companies, the defendant Westinghouse Electric & Manufacturing Company and its related companies, and the defendant Thomas A. Edison, Inc., and its related companies sold their products in all parts of the United States through dealers in virtually every city, town, and village; and the inability of plaintiff to sell the products of all or any of them in interstate commerce

as a part of his business in Denver would in the very nature of things have infinitesimally little effect upon such commerce. The amended complaint was fatally infirm and therefore the court providently dismissed the action. Glenn Coal Co. v. Dickinson Fuel Co., supra.

The judgment is affirmed.