**FEDDERSEN MOTORS, Inc. v. WARD et al.**

et al.

No. 3940.

United States Court of Appeals
Tenth Circuit.

March 6, 1950.

520

S. Robert Houtchens, Greeley, Colo., for appellant.

Stanley H. Johnson, Denver, Colo., for appellees Fred Ward, Inc. and Fred Ward.

Joseph G. Hodges, Denver, Colo. (William V. Hodges, Denver, Colo., Richard W. Larwin, Detroit, Mich., Hodges, Vidal & Goree, Denver, Colo., and Beaumont, Smith & Harris, Detroit, Mich., on the brief), for appellee Hudson Motor Car Co.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This appeal challenges a judgment of the United States Court for Colorado dismissing an action instituted by Feddersen Motors, Inc., against Hudson Motor Car Company, Fred Ward, Inc., and Fred Ward to recover treble damages for alleged violations of the Anti-Trust Act, as amended, 15 U.S.C.A. § 1 et seq. The action was dismissed for failure of the complaint to state a cause of action for which relief could be granted under the Act. For convenience, reference will sometimes be made to the parties as plaintiff and defendants, and sometimes as Feddersen, Hudson, Ward, and Fred Ward, respectively.

It was alleged in the complaint that Hudson was engaged at Detroit, Michigan, in the business of manufacturing Hudson automobiles and shipping them in interstate commerce to dealers located throughout the country; that Ward was the distributor for Hudson automobiles in the Denver, Colorado, district; that Ward and Fred Ward operated as a retail outlet for such automobiles in the City and County of Denver; that Ward was the agent of Hudson and was under its supervision and control; that Fred Ward owned or controlled all of the captial stock of Ward and exercised complete control of its management, purposes, policies, and business practices; and that from about January 1, 1946, to July 31, 1948, Feddersen was a Hudson Master Dealer at Greeley, Colorado, under the control of the defendants. It was further alleged that defendants formed a combination and conspiracy in restraint of interstate commerce; and that they conspired to do all of the acts and things and to use all means necessary and appropriate to make such restraint effective, as thereinafter more particularly alleged. It was further alleged that defendants conspired together and with others unknown to plaintiff, to force plaintiff out of business as a dealer in new Hudson automobiles by terminating and cancelling or threatening to terminate and cancel the dealer franchise contract of plaintiff and others unless plaintiff and others would sell new Hudson automobiles above ceiling prices during the time such prices were in existence; unless plaintiff maintained a business establishment equipped to handle and service one hundred and twenty-five new Hudson automobiles annually, defendants at the same time failing, neglecting, and refusing to deliver to plaintiff its fair share of Hudson automobiles; or if plaintiff operated a business side line at its business establishment, at the same time permitting other like dealers to have and operate side lines; and that all of such acts forced an increase in the unit cost of new Hudson automobiles delivered to plaintiff, and were promotive of monopoly in that particular line of commerce. It was further alleged that defendants had repeatedly discriminated between plaintiff and other purchasers in the prices of new automobiles; that the effect of such discrimination was substantially to lessen competition or tend to create a monopoly in the distribution of new Hudson automobiles in commerce, or to injure, destroy or prevent competition with other Hudson Master Dealers. It was further alleged that defendants had discriminated against plaintiff and in favor of other like

dealers in new automobiles by furnishing to other dealers services and facilities connected with the sale, offering for sale, and handling new Hudson automobiles but not furnishing like services and facilities to plaintiff on proportionally equal terms, and by requiring plaintiff to maintain and operate a business establishment which was not commensurate with the volume of business defendants permitted plaintiff to do; that the result of such discrimination was that new automobiles delivered to plaintiff cost plaintiff more than like automobiles cost its competitors in the vicinity of Greeley; that defendants discriminated against plaintiff and in favor of its competitors by granting to its competitors discounts, rebates, allowances, and preferences over and above those allowed plaintiff; and that for the purpose of destroying competition within the boundaries of the Denver distributorship and of eliminating plaintiff as a competitor in retail sales of Hudson automobiles, defendants had sold or contracted to sell new Hudson automobiles in various parts of Colorado at prices lower than exacted of plaintiff. And it was further alleged that plaintiff was engaged in interstate commerce together with defendants, and that the effect of the unlawful acts, policies, and practices of defendants was to burden, obstruct, and unduly restrain interstate commerce, and to damage plaintiff and its business.

At the request of Feddersen, the court required Hudson to file in the case a copy of a written distributor sales agreement between Hudson and Ward. Ward and Feddersen entered into three separate successive written contracts under which Feddersen acted as dealer and distributor of Hudson automobiles at Greeley. Each contract superseded its immediate predecessor. A copy of one of the contracts was filed in case, and there is no suggestion of substantial difference between them in respect to matters having material bearing here. Four affidavits were also filed in the case, one by the president of Feddersen, one by the assistant sales manager of Hudson, one by a person to whom summons was handed in an effort to effectuate service upon Hudson, and one by Fred Ward.

And apparently without objection on the part of anyone, the contracts and the affidavits were taken into consideration in connection with the presentation and final action upon the motions to dismiss. Under the contract between Hudson and Ward, Ward had the exclusive right to sell new Hudson automobiles at wholesale in its territory which included Denver and Greeley; and with other authorized dealers, it had the exclusive right to sell them at retail in the Denver Metropolitan area. Under the contracts between Feddersen and Ward, Feddersen had the exclusive right to sell new Hudson automobiles to purchasers within its territory. And under the contracts, new automobiles were to be sold at wholesale by Ward, and at retail by all dealers including Ward and Feddersen at prices not to exceed those listed by Hudson, plus freight. The last contract between Ward and Feddersen expired by its own terms on July 31, 1948; Ward declined to renew it, or to enter into a new agreement; and that terminated their relationship.

The background of the Anti-Trust Act was the common law relating to contracts for the restriction or suppression of competition in the markets, agreements to fix prices, concerts to divide marketing territories, understandings to apportion customers, meeting of minds to restrict production, unity of purpose to furnish inferior products, and other like practices which tend to raise prices or otherwise take from buyers or consumers the advantages which accrue to them from free competition in the markets. It extended the inhibition to any combination or conspiracy, whatever its form, having injurious effects of that kind upon the competitive system, and it provided both public and private remedies for the injuries flowing from the restraints. Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236. Its primary purpose was to prevent undue restraints of interstate commerce in the public interest, and to afford protection of the public from the subversive or coercive influences of monopolistic efforts. Appalachian Coals, Inc., v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825.

The right granted to individual suitors to seek reparation was secondary and subordinate in purpose. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885.

As a charter of freedom, the Act commands vigilance in the detection and frustration of all efforts unduly to restrain the free course of interstate commerce, but only those contracts or combinations are within its scope which by reason of intent, tendency, or the inherent nature of the contemplated acts prejudice the public interests by unduly restricting or unduly obstructing the course of interstate commerce. And in a case of this kind brought by an individual suitor for the recovery of three-fold damages, it is essential that the complaint allege a violation of the Act in the form of undue restriction or obstruction of interstate commerce and damages to plaintiff proximately resulting from the acts and conduct which constitute the violation. But injury to plaintiff alone is not enough upon which to predicate such an action. There must be harm to the general public in the form of undue restriction of interstate commerce. An appreciable part of such commerce must be the subject of the monopoly, restraint, or conspiracy. And a general allegation of the forming of such a combination or conspiracy with resulting injury to the public and to the plaintiff is not enough. While detail is not necessary, it is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce. Shotkin v. General Electric Co., supra.

With these general principles in mind, we come to the crucial question whether the complaint stated a cause of action cognizable under the Act. The pleading did not allege facts constituting the constituent elements of the familiar pattern of combination or conspiracy among competitors in the field of industry or commerce to fix prices, divide marketing territories, apportion customers, restrict production, or otherwise suppress competition. It alleged that the defendants formed a combination or conspiracy in restraint of interstate commerce. It further alleged that they combined and conspired to force plaintiff out of business as a dealer in Hudson automobiles. It further alleged that defendants had discriminated against plaintiff in certain respects. And it further alleged that the effect of the unlawful acts and practices on the part of defendants was to burden, obstruct, and unduly restrain interstate commerce and trade in new Hudson automobiles. But these were general allegations in the nature of conclusions, without any averment of specific acts from which it could be determined as a matter of law that defendants violated the act with harmful results to the public. No facts were alleged from which it could be determined as a matter of law that the contemplated purpose, tendency, inherent nature, or result of the conspiracy was that fewer automobiles moved in interstate commerce from Detroit, Michigan, into Colorado, or other destination; or that less Hudson automobiles were available for purchase in the markets, either in Colorado or elsewhere; or that the quality of the Hudson cars was lowered in any manner. The pleading was completely barren of any allegations from which it could be determined as a matter of law that the contemplated purpose, tendency, inherent nature, or result of the combination was to bring about any diminution in quantity or deterioration in quality of new Hudson automobiles moving in interstate commerce and sold to the public. Facts were alleged which tended to show that the conspiracy as contemplated and effectuated harmed plaintiff. But that was not enough. In addition, it was essential that the pleading allege facts from which it could be determined as a matter of law that the conspiracy contemplated or tended to restrain interstate commerce, with harmful effect to the public interest. Failing to contain allegations of that requisite nature, the pleading was insufficient in law to state a cause of action for which relief could be granted under the Act. Shotkin v. General Electric Co., supra.

It is suggested in the brief of Feddersen that in the event it be held that the complaint failed to state a cause of action under the Act, the essential elements which were not pleaded will be supplied if leave is granted to amend. The right granted by Federal Rule of Civil Procedure 15(a), 28 U.S.C.A., to amend the complaint once as a matter of course ended with the entry of the judgment dismissing the action. Thereafter, the pleading could be amended only with leave of the court. Application, addressed to the sound judicial discretion of the court, might have been made under Rule of Civil Procedure 60(b) to have the judgment set aside in order to permit the filing of an amended complaint. Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815. But the record before us fails to indicate that any application of that kind was made and therefore no question relating to the filing of an amended complaint is open to consideration on appeal.

The judgment is affirmed.