**RUDDY BROOK CLOTHES, Inc. v. BRIT-
ISH FOREIGN & MARINE INS. CO.,**
Limited, et al.

No. 50 C 814.

United States District Court
N. D. Illinois, E. D.

June 19, 1951.

Koven & Koven, Chicago, Ill., for plaintiff.

Mayer, Meyer, Austrian & Platt, Chicago, Ill., for defendants.

CAMPBELL, District Judge.

Defendants in this action are seventeen individual insurance companies and the National Board of Fire Underwriters, of which the individual insurance companies are members. The complaint charges that the defendants are in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1. In particular, the complaint alleges that plaintiff is a corporation engaged in the manufacture and jobbing of men's suits and coats; that, prior to February 13, 1947, plaintiff was insured against loss by fire by various defendants in the total amount of $207,500; that a fire occurred on plaintiff's premises on February 13, 1947, causing extensive damage to the premises and to plaintiff's inventory of goods; that an agent of defendant National Board of Fire Underwriters conducted an investigation of the fire and distributed the report thereon, dated May 6, 1947, to all the defendant insurance companies; that said report was false, misleading and prejudicial to plaintiff in that it indicated that plaintiff was a poor insurance risk; that, as a consequence of said report, defendants combined or conspired to cancel the fire insurance held by plaintiff, and did so cancel said insurance; that, since the time defendants cancelled plaintiff's insurance, plaintiff has been unable to obtain insurance in an amount sufficient to protect its inventory against fire loss. On the basis of the foregoing, plaintiff seeks the following relief: that the Court adjudge the acts of defendants to be in violation of the Sherman Act; that the defendants be enjoined from further violations of the Sherman Act; that defendants be directed to reinstate the fire insurance policies previously cancelled through their unlawful actions; and that the Court decree such other relief as it may deem proper under the circumstances in the case.

Defendants now move to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction under Section 16 of the Clayton Act, 15 U.S.C.A. § 26, to grant the relief sought. It further moves to strike portions of the complaint and for a more definite statement.

■ Defendants' motion to dismiss the complaint for failure to state a claim must be granted. It is clear from the allegations of the complaint that plaintiff is concerned only with a single, isolated incident involving plaintiff and defendants, and has completely failed to sufficiently plead that the public has been, or may be, affected in any way by defendants' alleged conduct. No valid reference is made in the complaint relating to the general market conditions for fire insurance or for the manufacture and distribution of clothing. There is no allegation of conduct on the part of defendants that would tend to inhibit competition among the defendants for the market for fire insurance. There is nothing in the complaint to indicate that the inception, purpose, intent or intended consequence of defendants conduct was to affect market prices of fire insurance or of clothing, or otherwise to interfere with the free operation of economic forces on either market. In other words, the net effect of the entire complaint is that the defendants have succeeded in boycotting a single business concern and have eliminated competition among themselves only insofar as it relates to the sale of fire insurance to that one business concern.

■ The purpose of the Sherman Act and the necessity for alleging substantial injury to the general public in order to state a cause of action thereunder is ably set forth in the following excerpts from Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519, 521:

"The background of the Anti-Trust Act was the common law relating to contracts for the restriction or suppression of com-

292

petition in the markets, agreements to fix prices, concerts to divide marketing territories, understandings to apportion customers, meeting of minds to restrict production, unity of purpose to furnish inferior products, and other like practices which tend to raise prices or otherwise take from buyers or consumers the advantages which accrue to them from free competition in the markets. It extended the inhibition to any combination or conspiracy, whatever its form, having injurious effects of that kind upon the competitive system, and it provided both public and private remedies for the injuries flowing from the restraints. Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236. Its primary purpose was to prevent undue restraints of interstate commerce in the public interest, and to afford protection of the public from the subversive or coercive influences of monopolistic efforts. Appalachian Coals, Inc. v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825. The right granted to individual suitors to seek reparation was secondary and subordinate in purpose. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir. 72 F.2d 885.

"As a charter of freedom, the Act commands vigilance in the detection and frustration of all efforts unduly to restrain the free course of interstate commerce, but only those contracts or combinations are within its scope which by reason of intent, tendency, or the inherent nature of the contemplated acts prejudice the public interests by unduly restricting or unduly obstructing the course of interstate commerce. And in a case of this kind brought by an individual suitor for the recovery of threefold damages, it is essential that the complaint allege a violation of the Act in the form of undue restriction or obstruction of interstate commerce and damages to plaintiff proximately resulting from the acts and conduct which constitute the violation. But injury to plaintiff alone is not enough upon which to predicate such an action. There must be harm to the general public in the form of undue restriction of interstate commerce. An appreciable part of such commerce must be the subject of the monopoly, restraint, or conspiracy. And a general allegation of the forming of such a combination or conspiracy with resulting injury to the public and to the plaintiff is not enough. While detail is not necessary, it is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce. Shotkin v. General Electric Co., supra." See also Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311; Neumann v. Bastian-Blessing Co., D.C.Ill. 1947, 70 F.Supp. 447.

In view of the foregoing, it should be patent that plaintiff has failed to state a cause of action within the meaning and purpose of the Sherman Anti-Trust Act. It becomes unnecessary, therefore, to consider defendants' motion to strike and for a more definite statement.

Motion of defendants to dismiss the complaint for failure to state a claim upon which relief can be granted is granted, and the cause is hereby accordingly dismissed.