**Francis BRAGEN, Plaintiff,**

v.

**HUDSON COUNTY NEWS COMPANY, Defendant.**

**Civ. A. No. 296–58.**

United States District Court
D. New Jersey.

Dec. 19, 1958.

**232**

Rothbard, Harris & Oxfeld, by Doane Regan, Newark, N. J., for plaintiff.

Abraham H. Gottlieb, Jersey City, N. J., by Julius Kass, New York City, for defendant.

WORTENDYKE, District Judge.

The following views are evoked by defendant's motion for summary judgment, Fed.R.Civ.P. 56(b), 28 U.S.C.A.

■ Plaintiff Bragen is seeking three-fold damages alleged to have resulted from defendant's violation of Section 2 of the Sherman Anti-Trust Act, 26 Stat. 209 (1890) and 38 Stat. 731 (1914), 15 U.S.C.A. §§ 2 and 15. There being no diversity of citizenship between the parties jurisdiction depends upon the cited Federal statute.

Defendant's right to summary judgment depends upon the absence of any genuine issue as to any material fact as determined by the pleadings, depositions and affidavits on file upon the pending motion. Fed.R.Civ.P. 56(c).

The complaint alleges the following: Bragen operates a store in Jersey City, New Jersey, at which he sells at retail "newspapers, magazines, books and other publications, as well as confectionery, tobacco and other merchandise." He asserts that his retail sale of newspapers and periodicals is a department or phase of the publishing business which constitutes a part of interstate commerce. Defendant Hudson County News Company (Hudson) is the sole wholesale distributor, within most of Hudson County, in which Bragen's store is located, of "practically all of the newspapers, magazines, paper covered books and certain other publications" which Bragen handles. As a consequence, Hudson has monopolized the distribution of this merchandise and "by means of agreements, contracts, understandings and conspiracies with [the] publishers" of such merchandise is enabled to determine "by whom, in what manner, and under what conditions" the ultimate consumers within Hudson County may obtain access to this merchandise. Further, the alleged monopoly enables Hudson to compel retail newsdealers to accept for resale publications which such

retailers have not ordered, cannot or do not wish to sell and which are "obscene, lascivious, and offensive to morality and good taste," as a condition of defendant's continued supply to such retailers of other publications. Since June 1957, Bragen alleges, Hudson has refused to supply him with merchandise and that he has been unable to secure such supply either from the publishers or from other wholesale distributors because they have refused to supply him without the consent of the defendant.

Hudson has denied the existence of the alleged monopoly and further denies the pleaded unavailability to the plaintiff of supplies of the merchandise which he handles as well as the alleged compulsion to accept offensive and unordered merchandise. It also denies its alleged refusal and that of others to supply Bragen with merchandise which he desired. Hudson has conceded that Bragen had at times received unordered deliveries of merchandise, together with his regular deliveries, but that this practice was not unknown in the general custom of the trade. Moreover, if such "volunteered" merchandise did not sell, it was later picked up by Hudson and the charges against the retailer for such deliveries were credited accordingly. Hudson contends that the sole issue between the parties is an indebtedness Hudson claims Bragen owes it in the amount of $126.19, for a service charge and billing for certain magazines delivered to Bragen, which has not been paid by him. Hudson states that upon payment of this amount, it will resume doing business with Bragen.

The "conspiracy" which Bragen charges in his complaint is mainly related to the objectionable periodicals which he stated Hudson supplied to him together with the other standard magazines and periodicals. On deposition he stated:

"Well, the thing that makes me say there is a conspiracy is the way the smut hits the stands, and the quantities that it hits the stands.

There is something deeper in this business than Hudson County News. There are some people in my mind who have made agreements with probably every local or every reasonable [sic.—responsible?] distributor in the country."

Thus the conspiracy charged between Hudson and the publishers is "to flood the market with dirty books * * * because there is a greater profit in handling that trash than there is in the Saturday Evening Post or Good Housekeeping."

The second aspect of the conspiracy charged is that upon termination of Hudson's service for the reason of Bragen's non-payment of the amount claimed by Hudson, Bragen was unable to obtain directly from the publishers the newspapers and periodicals which had previously been supplied to him by Hudson. In essence, Bragen was told that if he had any outstanding bills owing to Hudson they would not supply him. He concedes, however, that he spoke to only one magazine publisher and one newspaper publisher concerning direct delivery. He further admits that he made no attempts to purchase such merchandise from wholesale distributors outside of Hudson County.

From the affidavit of the president of Hudson it appears that when Hudson ceased serving Bragen it was delivering hundreds of different publications to approximately seven hundred retail dealers in Hudson County. Within a radius of two blocks of Bragen's store Hudson served four other similar retailers. Hudson does not deliver two of the seven New York City newspapers and one of the two Jersey City newspapers, of which the combined circulation within Hudson County exceeds the combined circulation of all of the newspapers which Hudson does distribute. Hudson does not make deliveries in certain portions of Hudson County, but concedes that in the area thereof in which it does make deliveries it is the sole wholesale distributor of magazines and paper-backed books. Hudson's former sole competitor, the

American News Company, discontinued its business in 1957. It is denied that Hudson has any agreement which could or does prevent any publisher from shipping directly to a retailer or from utilizing any other wholesale distributing agency. With respect to Bragen's charge that Hudson had delivered publications to him which he had not ordered and did not wish to receive, it is stated that such occasional instances resulted from mistake and nothing more. Such deliveries are at no cost to Bragen, since it has always been defendant's policy to give full credit to all retail dealers for all magazines and paper-backed books returned whether ordered or unordered, wanted or unwanted, displayed or not displayed. This is admitted by Bragen.

■ Upon a motion for summary judgment the Court is not called upon to decide any issues of fact but merely to determine whether any material issues of fact exist. It appears beyond contradiction, from the material before me, that a dispute arose between Hudson and Bragen concerning certain charges made by Hudson to Bragen's account. In consequence of this disagreement Hudson suspended its service to Bragen, but indicated that such service would be resumed upon payment of his alleged indebtedness. It appears without question that Bragen's sole cause of action, if any, is one sounding in contract. There being no diversity of citizenship here, this Court would be without jurisdiction to entertain such an action.

■ Assuming as true all well-pleaded facts, as distinguished from conclusory allegations, set forth in the complaint, as they are qualified or elaborated by Bragen's own testimony on deposition, there appears no issue of fact which, if resolved in his favor, could support an inference that Hudson had committed such a violation of Section 2 of the Sherman Act as would give rise to a cause of action in Bragen for threefold damages under Section 15. It is conceded that Hudson's wholesale distribution of newspapers and periodicals formed a part of interstate commerce insofar as it was a link in the chain of distribution from an out of the State publisher to a consumer-reader within the State. Cf. Mandeville Island Farms v. American Crystal Sugar Co., 1948, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328. Section 2 of the Sherman Act relied on by Bragen forbids monopolization, attempts to monopolize and combinations or conspiracies to monopolize any part of commerce among the several States. Monopoly power which offends against this section has been said by the Supreme Court to exist when there is control of price or competition in the competitive market for the particular product in question. United States v. E. I. DuPont De Nemours & Co., 1956, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264. There is no allegation in Bragen's complaint that the charged conspiracy in any way has as its object the control of prices of the merchandise Hudson distributes. Neither does Bragen complain of Hudson's exclusive territorial franchise with the publishers with whom it does business as being a monopoly or conspiracy to monopolize interstate commerce. That of which Bragen does complain is the cutting off by Hudson of his service, and his subsequent inability to obtain from the publishers the merchandise which he had previously secured from Hudson. However, in this action to recover treble damages for Hudson's alleged violations of the Sherman Act, it must be shown that Hudson's acts were harmful to the general public as well as to Bragen. Injury to Bragen alone by Hudson is not enough, but Hudson's acts must unduly restrict the free flow of interstate commerce. Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519. Moreover, the monopolistic effect upon interstate commerce must be appreciable. Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236; see Times-Picayune v. United States, 1953, 345 U.S. 594, 611, 73 S.Ct. 872, 97 L.Ed. 1277. The complaint herein does not contain the familiar allegations in a charged monopoly that there is a conspiracy to fix prices, divide marketing territories, apportion cus-

tomers, restrict production or otherwise suppress competition. Cf. Apex Hosiery v. Leader, 1940, 310 U.S. 469, 494–498, 60 S.Ct. 982, 84 L.Ed. 1311. The pleadings and proof before me simply show a personal grievance between Bragen and Hudson arising upon the refusal of the latter to continue doing business with Bragen. Cf. Shotkin v. General Electric Co., supra; Klor's Inc. v. Broadway-Hales Stores, 9 Cir., 1958, 255 F.2d 214, certiorari granted, 79 S.Ct. 23.

Section 2 of the Sherman Act does not restrict the general right of a trader engaged in an entirely private business activity freely to exercise his own discretion as to parties with whom he will deal, United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, although such right is not absolute nor exempt from regulation if accompanied by unlawful conduct or agreement or conceived in monopolistic purpose or market control. Lorain Journal Co. v. United States, 1951, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162. The publishers' refusal to sell to Bragen directly when Bragen had a dispute with the publishers' exclusive distributor is not evidence of a conspiracy having for its object a monopolistic practice. Brosious v. Pepsi-Cola Co., 3 Cir., 1946, 155 F.2d 99. Indeed it is a good business practice. Certainly Hudson can refuse to deal with a customer who has proved unsatisfactory to it without running afoul of the Sherman Act. Hoffman v. Riverside & Dan River Cotton Mills, D.C.S.D.N.Y. 1944, 55 F.Supp. 13. Clearly, Hudson's refusal to sell is not grounded in any attempt to monopolize since it is undisputed that service would be resumed upon the settlement of the claim for money owing. In the absence of any scheme to fix prices or eliminate competition such action is not offensive to the Sherman Act. Interborough News Co. v. Curtis Publishing Co., 2 Cir., 1955, 225 F.2d 289.

Bragen further claims violation of the Sherman Act by reason of the "tie-in" sales to him of magazines offensive to him with such suggestive titles as Titter, Wink, Eyefull, Whisper, Frolic and Figure, which Hudson compels him to accept as a condition of a continuing supply of the more "morally wholesome" publications such as the Saturday Evening Post and Good Housekeeping. The Supreme Court in Times-Picayune v. United States, supra, set forth the standard of illegality under the Sherman Act of tying arrangements to be when the supplier of the "tying" product, in this case the acceptable (to Bragen) magazines and periodicals, enjoys a monopolistic position in the market and if a substantial volume of commerce in the "tied" product, in this case the magazines of questionable taste, is restrained. Id., 345 U.S. at pages 608–609, 73 S.Ct. 880. Nowhere in the pleadings or depositions before me are there any facts set forth which would establish the second of these two conditions necessary to bring Hudson's activities within Section 1 of the Sherman Act. However, Bragen is not proceeding under Section 1 but under the monopolization offense of Section 2. But here again the facts as set forth fail to specify an intention on the part of Hudson to destroy competition or to build a monopoly. Times-Picayune v. United States, supra, 345 U.S. at page 626, 73 S.Ct. 889. Nothing is alleged which would justify the conclusion that the public suffered any injury (since it could exercise its prerogative by buying or not buying the questionable magazines) or that competitors had any reasonable grounds for complaint. Cf. Federal Trade Commission v. Gratz, 1920, 253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993. Further Bragen is free to sell magazines, periodicals and newspapers supplied by others than Hudson and indeed does so. See Federal Trade Commission v. Sinclair Co., 1923, 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746. There is nothing to show that Hudson exercises any restraint over the distribution of magazines and publications other than those which it distributes. Journal of Commerce Pub. Co. v. Tribune Co., 7 Cir., 1922, 286 F. 111. Lastly, any inference that this is a monopolistic practice is negatived by the

fact that Hudson gives full credit to the retailer for any magazines and paper-backed books it supplied which were unsold by the retailers.

This Court, therefore, has no jurisdiction in this case because the plaintiff has not brought himself within the provisions of 15 U.S.C.A. § 15, and there is no diversity of citizenship between the parties. The defendant's motion for summary judgment will be granted and an appropriate order may be presented in accordance with the views hereinabove expressed.