**C. C. RICHARDSON and Rich's Enterprises, Inc., d/b/a Star Plymouth, Plaintiffs,**

v.

**CHRYSLER MOTORS CORPORATION et al., Defendants.**

**Civ. A. No. 12189.**

United States District Court
S. D. Texas,
Houston Division.
July 27, 1966.

Fred A. Collins, Dillingham & Schleider, Ben H. Schleider, Jr., and William M. Dickson, Houston, Tex., for plaintiffs.

Baker, Botts, Shepherd & Coates, Finis E. Cowan, Houston, Tex., for defendants Chrysler Motors Corp. and Chrysler Corp.

Vinson, Elkins, Weems & Searls, David T. Searls, Harry M. Reasoner, and Ralph L. Fowler, Houston, Tex., for defendant Albert Berry.

Memorandum Opinion:

HANNAY, District Judge.

Plaintiffs C. C. RICHARDSON, RICH'S ENTERPRISES, INC., individually and d/b/a STAR PLYMOUTH, hereinafter called "plaintiffs," or Richardson, sued CHRYSLER MOTORS CORPORATION and CHRYSLER CORPORATION, both Delaware corporations, and the HOUSTON AUTOMOBILE DEALERS ASSOCIATION of Houston, BETTER BUSINESS BUREAU OF HOUSTON, COMMERCIAL CREDIT CORPORATION, ALBERT BERRY, doing business and operating under the name of ALBERT BERRY MOTOR COMPANY of Houston, hereinafter referred to as Berry, A. C. BURTON COMPANY, INC., and Mrs. A. C. Burton, ROSENSTOCK MOTORS of Houston and Julius Rosenstock, WENDELL HAWKINS MOTORS, INC., and WENDELL HAWKINS of Houston, THEODORE A. HANSON of Houston and L. L. COLBERT of Michigan, FRANK SUSLAVICH of Michigan and FRED M. HARRIS of Georgia.

The second amended complaint (the trial pleading) further avers that this Court has jurisdiction under Title 15, United States Code Annotated, Chapter 1, Sections 1, 2, 3, 7, 8, 9, 10, 12, 13, 14, 15, 22 and 24, also under Title 15, United States Code Annotated, Chapter 27, Sections 1221 through 1225.

For cause of action Plaintiffs alleged that prior to May, 1958, the Plaintiff C. C. Richardson had been engaged in the retail automobile business and had built a successful career as a volume operator, operating new car retail dealership agencies for himself and others in various parts of the United States. That immediately before the occurrences made the basis of this suit, the said Richardson had successfully engaged in a new car retail dealership agency for Chevrolet automobiles located in Houston, Harris County, Texas, until he had sold that agency in the early part of 1958.

Defendants Chrysler Motors Corporation and/or Chrysler Corporation, acting through their respective agents, sought out Richardson with the purpose of persuading him to purchase the assets of Davis Plymouth located at 4057 Bellaire Blvd., in Houston, Texas. This Richardson did. He claims that Chrysler Motors Corporation and/or Chrysler Corporation, acting through agents, had promised him a franchise to sell Plymouths and that, acting upon such representation, he purchased the assets of Davis Plymouth and entered into a five year

lease of the premises formerly occupied by Davis Plymouth and also purchased the furniture, fixtures and equipment of Davis Plymouth.

Richardson further claims that he also bought a large number of Plymouth automobiles elsewhere, and made financial arrangements and incurred obligations with the Defendant Commercial Credit Corporation.

Plaintiffs further say that Defendants Albert Berry Motor Company and the various other motor companies made Defendants herein were engaged in the sale at retail of Plymouth and Chrysler automobiles in the Houston market. Plaintiffs further claim that the defendant motor companies and the individuals who were the principal owners of same, fearing Richardson as competition, arranged for a meeting with the employees of Chrysler Motor Corporation and/or Chrysler Corporation. Plaintiffs further claim at that meeting Defendants entered into a contract, combination and conspiracy to deprive Richardson of the franchise agreement so that they would not have to compete with a volume operator and could thus increase and maintain a higher retail price on new Plymouth automobiles which high price would not prevail in a competitive and uncontrolled market.

Plaintiffs further allege in furtherance of said contract, combination and conspiracy, Defendants Chrysler Motors Corporation and/or Chrysler Corporation, together with Defendants Commercial Credit Corporation, Better Business Bureau, and Theodore M. Hanson, did set out to destroy the credit and borrowing ability of Plaintiffs, thereby joining in the said contract, combination and conspiracy to deprive Richardson of the franchise agreement and to gain control of the Plymouth automobile market in the Houston area in order to prevent and decrease competition. (It is significant to note that Albert Berry was not named as one of those who set out to destroy the credit and borrowing ability of Plaintiff.)

Plaintiffs further say that because of the alleged conspiracy Chrysler Motors Corporation failed and refused to forward to Richardson and deliver to him a franchise, but instead denied and returned to him his application for a direct dealership franchise. Plaintiffs further contend as a proximate result of the contract, combination and conspiracy of the Defendants and their actions in carrying out said contract, combination and conspiracy, Richardson, a volume operator, was excluded from the Houston market, thus stifling competition, and the public has been damaged due to the control of the market of new Plymouth automobiles in this market which has resulted in increased retail prices, or the maintenance of higher retail prices on new Plymouth automobiles.

Plaintiffs further claim that the alleged conspiracy had the effect of a group boycott against Richardson and that he suffered damages because of expenditures made and incurred in reliance on the actions and course of conduct of the Defendant Chrysler Motors Corporation, that all of the Defendants named caused serious and grievous damage to the business reputation of Plaintiffs, that the Plaintiffs sustained serious damage to their capital investment, a considerable portion of which was lost, and Plaintiffs have sustained loss of profits and loss of anticipated profits by reason of the wrongful, willful and malicious acts of Defendants, and each of them, all to the damage of Plaintiffs in the sum of $750,000.00.

Plaintiffs further assert that it was necessary to hire attorneys and ask for reasonable attorney's fees in the amount of $200,000.00. They also ask for costs of this suit.

Defendants Chrysler Corporation and Chrysler Motors Corporation deny the allegations of Plaintiffs' complaint and particularly say that the true facts of this matter are that Richardson made an application for a Direct Dealership Agreement and filled out a written application. This written application specifically specifies that the Chrysler Com-

panies incur no obligation by allowing an applicant to complete the application and specifically states that an application can be approved only if the approval is granted in writing by a Vice President of Chrysler Motors Corporation. In this case Richardson's application was seriously considered by the various responsible officials of Chrysler Motors Corporation and after due and proper deliberation and consideration of all of the information and facts applicable to such application Chrysler Motors Corporation and Chrysler Corporation decided in good faith that the application should be refused and it was in good faith refused. Defendants specifically deny that this action was taken in pursuit of any combination or conspiracy and say that on the contrary the action was simply the exercise of business judgment, which judgment was formed after careful consideration of all of the facts and in complete good faith.

The other Defendants served filed similar answers.

After a vast number of motions and the taking of many depositions, the case went to trial on February 15, 1965, and continued for some 3½ weeks. At the conclusion of the testimony, Plaintiffs had dismissed from the case all of the Defendants except Chrysler Motors Corporation, Chrysler Corporation, and Berry. Each of the remaining Defendants made motions for an instructed verdict in their favor which motions were by the Court taken with the case.

The charge of the jury contained a number of definitions and instructions and the following three special issues:

### SPECIAL ISSUE NO. 1

Do you find that in June of 1958 any two of the defendants herein entered into a contract, combination or conspiracy in which they agreed that a Plymouth franchise would not be issued to C. C. Richardson or to Rich's Enterprises, Inc. doing business as Star Plymouth?

### SPECIAL ISSUE NO. 2

Do you find that the action of Chrysler Motors Corporation in refusing to grant C. C. Richardson's application constituted an unreasonable restraint of trade or commerce among the several states, as these terms have been explained to you in this charge?

### SPECIAL ISSUE NO. 3

What do you find from a preponderance of the evidence was, as a direct and proximate cause of said action by plaintiffs, the amount of money, if any, that will fairly and reasonably compensate plaintiffs for the monetary injury, if any, done to them by the defendants up to the time when plaintiffs returned the premises located at 4057 Bellaire to Davis Motor Company?

The answers to the special issues were as follows:

Special Issue No. 1: We do.

Special Issue No. 2: We do.

Special Issue No. 3: $15,000.00.

After the return of the verdict, the Plaintiffs filed a motion for a judgment in accordance with the verdict and the Defendants renewed their motions for an instructed verdict and to have the verdict set aside to have judgment entered in accordance with Defendants' respective motions for an instructed verdict. Both sides requested oral arguments on their respective motions. Soon thereafter, one of the principal attorneys for the Plaintiffs, Fred Collins, became seriously ill and of necessity caused delay in the briefing and hearing of the arguments on the motions above mentioned.

### DISCUSSION:

The questions here presented for decision are:

1.(a) Have Plaintiffs alleged a cause of action against Berry upon which a recovery could be based?

(b) Is the proof offered by Plaintiffs against Berry legally sufficient to support a verdict of violation of the antitrust laws?

2.(a) Have Plaintiffs alleged a cause of action against either Chrysler Motors Corporation or Chrysler Corporation for violation of the antitrust laws upon which a recovery may be had?

(b) Is the proof legally sufficient to support a verdict for Plaintiffs against either Chrysler Motors Corporation or Chrysler Corporation for a violation of the antitrust laws?

3. What amount of damages, if any, has been properly alleged and proven by Plaintiffs against the Defendants herein?

4. What amount of attorney's fees, if any, should be allowed Plaintiffs' attorneys herein?

1.(a) The attempt to assert a cause of action against Berry was not for tortious interference of a contract or for defamation of character but solely for conspiracy in violation of the antitrust laws of the United States. Plaintiffs allege that they "verily believe" that a meeting of Plymouth retail automobile dealers in the Houston trade area, along with the Houston Automobile Dealers Association, arranged for a meeting with agents, servants and employees of the Chrysler Motors Corporation and/or Chrysler Corporation. Plaintiffs further allege that at that meeting (no date or place of same being stated) it was agreed that Plaintiffs would not be granted a franchise to sell new Plymouth automobiles, and thereby resulted in an increase and maintenance of higher retail prices of new Plymouth automobiles. No such meeting was ever held and naturally no such agreement was ever made and, therefore, there could be no proximate resulting damages because no such contract and conspiracy ever existed. Plaintiffs also allege generally that the conspiracy "stifled competition and damaged the public as well as the Plaintiffs." This is, of course, very broad language and is but the conclusion of the pleader.

In the case of Feddersen Motors v. Ward, 180 F.2d 519, at page 522, Judge Bratton, speaking for the United States Court of Appeals for the Tenth Circuit, delivered what could be regarded as a guideline statement which is as follows:

"With these general principles in mind, we come to the crucial question whether the complaint stated a cause of action cognizable under the Act. The pleading did not allege facts constituting the constituent elements of the familiar pattern of combination or conspiracy among competitors in the field of industry or commerce to fix prices, divide marketing territories, apportion customers, restrict production, or otherwise suppress competition. It alleged that the defendants formed a combination or conspiracy in restraint of interstate commerce. It further alleged that they combined and conspired to force plaintiff out of business as a dealer in Hudson automobiles. It further alleged that defendants had discriminated against plaintiff in certain respects. And it further alleged that the effect of the unlawful acts and practices on the part of defendants was to burden, obstruct, and unduly restrain interstate commerce and trade in new Hudson automobiles. But these were general allegations in the nature of conclusions, without any averment of specific acts from which it could be determined as a matter of law that defendants violated the act with harmful results to the public. No facts were alleged from which it could be determined as a matter of law that the contemplated purpose, tendency, inherent nature, or result of the conspiracy was that fewer automobiles moved in interstate commerce from Detroit, Michigan, into Colorado, or other destination; or that less Hudson automobiles were available for purchase in the markets, either in Colorado or elsewhere; or that the quality of the Hudson cars was lowered in any manner. The pleading was completely barren of any allegations from which it could be determined as a matter of law that the contemplated purpose, tendency, inherent nature, or result of the combination

was to bring about any diminution in quantity or deterioration in quality of new Hudson automobiles moving in interstate commerce and sold to the public. Facts were alleged which tended to show that the conspiracy as contemplated and effectuated harmed plaintiff. But that was not enough. In addition, it was essential that the pleading allege facts from which it could be determined as a matter of law that the conspiracy contemplated or tended to restrain interstate commerce, with harmful effect to the public interest. Failing to contain allegations of that requisite nature, the pleading was insufficient in law to state a cause of action for which relief could be granted under the Act. Shotkin v. General Electric Co., supra." (10 Cir., 171 F.2d 236)

In Alexander v. Texas Company, D.C., 165 F.Supp. 53, at pages 56, 59–60, Judge Dawkins declared as follows:

"In Black & Yates v. Mahogany Ass'n, 3 Cir., 1941, 129 F.2d 227, 231, 148 A.L.R. 841 (certiorari denied 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539)—cited with approval by Judge Borah in Motorola, supra (Nielson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 200 F.2d 911, 913, cert. den. 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356)—the Third Circuit said:

'The views just expressed make it unnecessary for us to elaborate upon plaintiffs' failure to state a cause of action under the Sherman or Clayton Acts. We quite agree with the learned district judge in that respect. The vital allegations in such an action are similar to those in any civil conspiracy case. A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, *the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment. The plaintiffs have pleaded none of these facts. Nei-*

*ther the date of the alleged conspiracy nor its attendant circumstances are set forth. Nor is it averred who made the statements, where, when, or to whom.'* (Emphasis added.)"

In Crummer Company v. DuPont, 223 F.2d 238, 245, the Fifth Circuit, speaking through Judge Hutcheson, accurately and artistically said:

" * * * Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference, as here, trifles light as air, to the suspicious strong as proofs from Holy Writ, will suffice * * *."

■ 1.(b) Plaintiffs introduced in evidence the following claimed wrongdoing on the part of Berry: Telling Mr. Colbert, President of Chrysler Corporation, that Richardson was put off limits by Ellington Field while operating Star Chevrolet. That a number of complaints were filed against Star Chevrolet with Better Business Bureau, and that Richardson's conduct as operator of Star Chevrolet was such that he was asked not to apply for membership in Better Business Bureau for a period of one year, and finally, that he had plead guilty to a charge of assaulting a woman. All of these accusations were true. Berry also suggested that Chrysler investigate Richardson before granting the franchise. As above pointed out, Berry was not one of those mentioned in Plaintiffs' Second Original Complaint as a defendant that had caused Richardson any loss of credit. Then, too, Berry's business as a Plymouth dealer was small when compared to the volume of business done in Harris County. In 1957 he sold about 8.7% of the Plymouths sold in Harris County, and in 1958 approximately 10.7% of the new Plymouths sold in Harris County.

■ Another necessary factor in establishing liability against Berry would be to show that some act of Berry resulted in an unreasonable restraint of trade or that an act on his part was a proxi-

mate cause of any damage to Plaintiffs. A special issue regarding this matter was not submitted to the jury.

In Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, at page 887, the Court held:

"To recover, the plaintiff must establish two things: (1) A violation of the Anti-Trust Act and (2) damages to the plaintiff proximately resulting from the acts of the defendant which constitute a violation of the Act. * * * "

In the instant case Plaintiffs failed to establish either of these things as against Berry.

Another cogent reason bars Plaintiffs' recovery against Berry. Only a horizontal conspiracy between competitors of the same level is prohibited by the Sherman Antitrust Act—not a vertical conspiracy between manufacturer-distributor and its retail dealers. Here, where Berry was the only remaining retail dealer after the voluntary dismissal by Plaintiffs of all the other retail dealers, Berry was thereby exonerated because it is elementary that it requires at least two persons or entities to effect a conspiracy and, therefore, Berry alone could not form a "group boycott." See Arzee Supply Corp. of Conn. v. Ruberoid Co., D.C., 222 F.Supp. 237, at page 242, where a "group boycott" is described as a concerted refusal by traders to deal with other traders. See also Klor's, Inc. v. Broadway-Hale Stores, 9 Cir., 255 F.2d 214, at 234, and Ace Beer Distributors, Inc. v. Kohn, Inc., 6 Cir., 318 F.2d 283, cert. den. 375 U.S. 922, 982, 84 S.Ct. 267, 479, 11 L.Ed.2d 166, 428, which holds that a single trader refusing to deal with another trader does not constitute a group boycott.

For all of the reasons above set out, it follows that at the conclusion of all of the testimony offered by Plaintiffs, inasmuch as a case had not been either plead or proven against Berry upon which a recovery could be had, that his motion for a directed verdict should have been granted and since the motion was taken along with the case, is now granted.

2.(a) and (b) Coming now to the question of whether the Chrysler Corporation and/or Chrysler Motors Corporation are liable, all that has been said heretofore and all of the cases above cited with reference to the insufficiency of the pleading and lack of proof re Berry is also applicable to these two defendants. Also, it is well to bear in mind that now only the Chrysler Corporation and its wholly owned subsidiary Chrysler Motors Corporation, remain in the lawsuit.

With absence of proof of any conspiracy having been established, the principal claims against the remaining defendants is because of their refusal to deal with the plaintiffs by denying plaintiffs' application for a franchise and for alleged damages to the public. When plaintiffs were duly notified of such refusal, plaintiffs then transferred back to Davis the lease to the premises on Bellaire Blvd. and the equipment therein situated for an undisclosed consideration.

In Ace Beer Distributors, Inc. v. Kohn, Inc., supra, at page 287, the Sixth Circuit held:

"The *substitution* of one distributor for another in a competitive market of the kind herein involved does not eliminate or materially diminish the existing competition of distributors of other beers, is not an unusual business procedure, and, in our opinion, is not an unreasonable restraint of trade. Hohensee v. Akron Beacon Journal Publishing Co., D.C., 171 F.Supp. 90, 174 F.Supp. 450, affirmed 277 F.2d 359, C.A.6th, cert. denied, 364 U.S. 914, 81 S.Ct. 277, 5 L.Ed.2d 227; Kinnear-Weed Corp. v. Humble Oil & Refining Co., 214 F.2d 891, C.A.5th, cert. denied, 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715." (Emphasis added.)

To the same effect is the case of Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kan., 353 F.2d 618, at page 622, where the Court of Appeals for

the Tenth Circuit on November 9, 1965, decided:

"* * * The court pointed out that the substitution of one distributor for another 'does not eliminate or materially diminish the existing competition' and was not an unreasonable restraint of trade. In Feddersen Motors, Inc. v. Ward, 10 Cir., 180 F.2d 519, and Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236, we held that a conspiracy to terminate a distributorship is not an antitrust violation. In our opinion the distributorship cases are not applicable here. The success of the conspiracy in those cases resulted in the substitution of one distributor for another. This changed the identity of a competitor but did not eliminate competition. * * *"

Then another potent reason why the Chrysler defendants were free from liability herein is as Circuit Judge Borah wrote in Motorola, Inc., supra, 200 F.2d at page 914:

"* * * In the instant case we do not have any of those situations and it appears plain to us that the conspiracy upon which plaintiff relies consists simply in the *absurd* assertion that the defendant, through its officers and agents, conspired with itself to restrain its trade in its own products. * * *" (Emphasis added.) And later on page 915:

"* * * There is nothing whatever in the Act to suggest that it covers a situation where the manufacturer refuses to make a sale or enter into a contract, and it has been stated time and again that a manufacturer has the *unquestioned* right to refuse to deal with anyone for reasons sufficient to himself. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; United States v. Schrader's Son, Inc., 252 U.S. 85, 40 S.Ct. 251, 64 L.Ed. 471; Frey & Son v. Cudahy Packing Co., 256 U.S. 208, 41 S.Ct. 451, 65 L.Ed. 892; Arthur v. Kraft-Phenix Cheese Corporation, supra, [D.C., 26 F.Supp. 824]. For that matter, a review of all of the cases decided by the Supreme Court involving Section 3 of the Clayton Act, reveals that in each of them there was an agreement and not a mere refusal to deal.[1] * * *" (Emphasis added.)

1. Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; Federal Trade Commission v. Curtis Publishing Co., 260 U.S. 568, 43 S.Ct. 210, 67 L.Ed. 408; Federal Trade Commission v. Sinclair Refining Co., 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746; International Business Mach. Corp. v. United States, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085; Pick Mfg. Co. v. General Motors Corp., 299 U.S. 3, 57 S.Ct. 1, 81 L.Ed. 4; Fashion Originators' Guild v. Federal Trade Commission, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Standard Oil Co. v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371.

There is no showing here that Defendants Chryslers' refusal to deal with Plaintiffs affected interstate commerce in any way. See Broussard v. Socony Mobil Oil Company, D.C., 226 F.Supp. 195, and cases therein cited.

In line with the facts in this case and the authorities above cited, it is abundantly clear that no cause of action has been either pleaded or proved against either of the Chrysler defendants upon which plaintiffs are entitled to any relief. Therefore, the *motion for a directed verdict* at the conclusion of all the evidence should have been and is hereby granted.

■ 3. Considering now the question of damages, plaintiffs' claim for recoverable damages is too uncertain and speculative upon which to base a recovery. Although I have heretofore demonstrated that neither the pleadings nor the proof were legally sufficient to entitle the plaintiffs to a judgment herein, I specifically find that there has been inadequate proof of damages either as against Berry or the Chrysler Corporation or the Chrysler Motors Corporation.

Richardson's claim of damages is deficient because there is no evidence in the

record as to what salary Richardson paid himself or what withdrawals he made from the corporation during its existence. Likewise, there is no evidence as to what funds or capital Richardson took from the corporation in the manner of loans or other disbursements. There is no evidence as to what consideration passed between Davis and Richardson when Davis again reassumed possession of the leased property and equipment thereon. The record is silent as to whether or not there was a profit or loss made on the cars purchased from Davis. Also, there is no testimony of the profit or loss on the cars purchased from Freeway Motors. Then, too, in this last connection, there is a stipulation showing that at one time there was an unpaid balance of a judgment of approximately $10,000, but there is no evidence that this remains unsatisfied and is an obligation of Rich's Enterprises, Inc. at the time of the trial. Further, there is no evidence that this judgment was not completely offset by profits on the sales of some of the other automobiles in the transaction. The judgment in question relates only to between 18 and 25 of the automobiles out of a total of over 100 automobiles involved. There is no evidence of profit or loss on the used car operations conducted by Richardson at the location in question during the months that he had possession of the premises. There is no evidence of profit or loss on the service facilities maintained by Richardson at the location in question during the months he had possession of the premises.

From the above named facts, I am clearly and firmly of the opinion that Plaintiffs have failed to establish by competent or substantial proof that either Berry or the Chrysler Corporation or the Chrysler Motors Corporation committed any act or acts that could be construed as violating any of the antitrust laws involved herein. In a substantially similar situation, then Chief Judge Hutcheson of the Fifth Circuit, precisely and concisely wrote in Hudson Sales Corp. v. Waldrip, 211 F.2d 268, at page 274:

"This court, in the Motorola case has discussed and dealt with a situation quite similar to this. Its decision there is in accord with the uniform current of authority that a plaintiff suing under the antitrust acts must prove a violation which produces a public injury, that is a conspiracy or agreement in restraint of trade which substantially affects or lessens competition, raises prices, or attempts to create or creates a monopoly, and in addition must prove that as a result of such violation, he suffered a private injury 'in his business or property' by reason and as the proximate result thereof, and the nature and extent of that injury. The evidence wholly fails to prove such a case in any of its elements. The judgment is Reversed and here Rendered for appellant."

It therefore follows that no damages are recoverable herein.

■ 4. Since there has been no proof of liability or damages and, therefore, no benefit has been obtained by Plaintiffs herein, Plaintiffs' attorneys, although earnest and vigorous in the cause of their clients, are not entitled to recover attorney's fees herein.

In summary, in accord with the above, I conclude and hold as a fact and as a matter of law:

1.(a) and 2.(a) Plaintiffs have not alleged a cause of action against either Berry or Chrysler Corporation or Chrysler Motors Corporation upon which a cause of action has been stated.

1.(b) and 2.(b) Plaintiffs have failed to prove liability by reason of violation of the antitrust laws of either Berry or Chrysler Corporation or Chrysler Motors Corporation.

3. Plaintiffs have failed to prove any damages proximately caused by any act or acts of Berry or Chrysler Corporation or Chrysler Motors Corporation because of any violation of the antitrust laws.

4. Since Plaintiffs did not recover a judgment in this case, their attorneys

are naturally not entitled to any attorney's fees and such claimed attorney's fees are denied.

I therefore find against all of the Plaintiffs and in favor of all the Defendants and decide and hold that the instructed verdicts requested by Berry, Chrysler Corporation and Chrysler Motors Corporation, respectively, should be, and are here now, granted.

I further find that each of the above named three Defendants is entitled to and is hereby granted a judgment notwithstanding the verdict of the jury herein.

I further assess all of the costs of Court herein against the Plaintiffs.

The Clerk will notify counsel.