250 F.2d 881
 NEW HOME APPLICANCE CENTER, Inc., Appellant,
v.
W. G. THOMPSON, the Western Corp., doing business as Western
Appliance Corp., W. Dan Bell, William Gibbons, Frances
Hammond, William Lujan, Emil Berkowitz, T. E.
Braunschweiger, Allied Applicances, Inc., the Denver Area
Better Business Bureau, Inc., New York Furniture House,
Inc., and the Daniels & Fisher Stores Company, Appellees.
 No. 5627.
 United States Court of Appeals Tenth Circuit.
 Nov. 27, 1957.
 
 Dayton Denious, Denver, Colo., for appellant.
 John F. Shafroth and George Louis Creamer, Denver, Colo. (W. Clayton Carpenter, Allan R. Phipps, Samuel S. Sherman, Jr., John W. Low and Philip S. Van Cise, Denver, Colo., on the brief), for appellees.
 Before MURRAH, PICKETT and LEWIS, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 Holding that the complaint in this case, as amended, and as attempted to be amended, did not state a claim under the triple damage provisions of the antitrust acts, the trial court dismissed the complaint, and this appeal is from the judgment of dismissal.
 
 
 2
 The complaint, as amended, alleged that at all times complained of, the complainant was a discount retail dealer of brand name electrical applicances in Denver, Colorado, whose profit depended in a large measure upon volume through extensive newspaper advertising; that certain of the defendants were distributors or wholesale dealers through whom the complainant purchased its products for resale; that certain other named defendants were competitive retail dealers in all or some of the brand name products sold by the complainant; that the defendant, Better Business Bureau, was an organization to which all of the defendants belonged except New York Furniture, Inc.; that all the products purchased and sold by the retailer through the wholesalers are manufactured outside the State of Colorado and are shipped interstate to the retailers' stores, thence to the ultimate consumer; that in the course of its business operations, complainant purchases substantial amounts of these products, some of which are shipped direct to it interstate, and some have already come to rest prior to purchase. The complaint then states that the defendants formed a combination or conspiracy, the purpose, object and effect of which was to deny retail appliance dealers in Denver, Colorado free access to the channels of interstate commerce by preventing them from making interstate purchases; and requiring them to purchase their requirements of home appliances from local wholesalers in Colorado, and thus to fix the prices at which such products were to be sold retail by Denver retail dealers; to monopolize interstate commerce in wholesale appliances and to eliminate the complainant as a competitior in such trade.
 
 
 3
 Specific overt acts in furtherance of the conspiracy were set out in the complaint, namely: the refusal of the wholesalers to sell the complainant electrical appliances at the instance of the named retail competitors. It was further alleged that as a part of the same conspiracy, and in furtherance thereof, the defendants, acting in concert obtained agreements with the two daily newspapers in Denver to limit and restrict complainant's advertising by excluding it from the advertising columns for a period of seven weeks, and thereafter requiring complainant to advertise only those items 'obtained through regular Denver wholesale channels' at prices and on terms approved by the supplying distributors, and forbidding the complainant to advertise certain brand name products on any terms.
 
 
 4
 It was further alleged that to accomplish the conspiracy, the Denver Better Business Bureau circulated disparaging matter of the complainant, calculated and intended to cause termination of its financing arrangements; and that it otherwise coordinated the efforts of the defendants in excluding and restricting the complainant's access to the advertising media in Denver. It was specifically alleged that by such concerted action, the defendants had restrained and monopolized a substantial part of interstate commerce by eliminating the plaintiff's competition and raising prices for home appliances to consumers in Denver and vicinity. Then followed specific allegations showing business losses to the complainant for the years involved.
 
 
 5
 After dismissal of the amended complaint, the complaint tendered further amendments tending to show in more specific detail the manner in which the acts complained of affected interstate commerce with resulting damages to the complainant. These tendered amendments were denied on the grounds that they added nothing to the validity of the complaint.
 
 
 6
 Basing its judgment squarely on Federsen Motors v. Ward, 10 Cir., 180 F.2d 519, and Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236, the trial court concluded that the complaint did not sufficiently allege facts from which it could be determined as a matter of law that the alleged conspiracy unduly restrained interstate commerce with requisite harmful effect to the public interest; that the complaint failed to allege with sufficient definiteness the volume of interstate trade, or that complainant's interstate purchases were adversely affected by the defendants' activities. Nor did the court think the defendants' refusal to deal with complainant on a purely local basis had any prohibited effect on interstate commerce as in Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328. And see Spears Free Clinic and Hospital for Poor Children v. Cleere, 10 Cir., 197 F.2d 125.
 
 
 7
 At the outset, it seems appropriate to say that nothing in either the Shotkin or Feddersen cases was intended to suggest that a special form of pleading is indicated or sanctioned in antitrust cases. Indeed, the liberal rules of pleading are as applicable to thses cases as any other case. Under these rules, it is not the office of a complaint to plead detailed facts or state particular theories for recovery. It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis. Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary or permissible; and 'where a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified. If a party needs more facts, it has a right to call for them under Rule 12(e) of the Federal Rules of Civil Procedure (28 U.S.C.A.)' And, the free use of summary judgment is available to avoid expensive trials of frivolous claims. See United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618. See also Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972; Nagler v. Admiral Corp., 2 Cir., 1957, 248 F.2d 319; Clark 'Special Pleading in the 'Big Case", 21 F.R.D. 45.
 
 
 8
 We also know from experience that motions to make more definite and certain, or for a bill of particulars under Rule 12(e), tend only to promote verbiage. Particularization of the issues is indeed the first order of business. But the Rules do not contemplate their definition by paper pleadings. They are to be ascertained and articulated by the free use of controlled pre-trial discovery under the guiding hand of the judge who has the responsibility for the trial of the case. See 'Procedure In Antitrust and Other Protracted Cases', a Report adopted by the Judicial Conference of the United States on September 26, 1951. Ultimately the issues, when defined by discovery and pre-trial conferences, are embodied in a pre-trial order in which the factual and legal issues are defined and the plan for trial delineated. i.e. Clark 'Special Pleading in the 'Big Case", supra. Adherence to and utilization of these simple rules will undoubtedly result in a more expeditious and creditable disposition of this type of litigation. The Shotkin and Feddersen cases must be considered in the light of these fundamental procedural concepts.
 
 
 9
 The complainant in the Shotkin case who was also a retail dealer in electrical appliances, sued certain manufacturers and retail dealers, charging a conspiracy in restraint of trade. There was a charge of price fixing with injury to the public. But, looking at the whole complaint, drawn pro se, we concluded that it stated only a personal grievance 'based solely and exclusively upon the declination' of the manufacturer to do business with the complainant 'as an outlet for its manufactured merchandise, with no evil consequences to the consuming public'. (171 F.2d 239.) The defect there was not that the complaint did not state enough, but that the substance of what it did state was legally insufficient on which to grant relief on any accepted theory.
 
 
 10
 Feddersen Motors v. Ward, surpa, followed the same pattern of the Shotkin case. There, a retail dealer complained of a conspiracy on the part of the manufacturer and a retail dealer to exclude him from the interstate market and to fix prices. But the court, looking at the agency contract, was able to conclude that the substance of the complaint was a permissible declination on the part of the manufacturer to further deal with his agent in a prescribed territory.
 
 
 11
 It is of course true without dispute that a manufacturer is free to make vertical agreements with local agents and dealers for the sale of his wares or products in a given territory for a stated price; and, he is also free as far as the antitrust laws are concerned, to discontinue his relations with any dealer so long as his conduct is not conceived in monopolistic purpose or market control. See Paramount Film Distributing Corp. v. Village Theatre, 10 Cir., 228 F.2d 721, and cases cited.
 
 
 12
 But, any horizontal agreement among local competitors or with manufacturers, which has the purpose and effect of fixing or stabilizing prices at local levels, or apportioning territories, or suppressing competition, is illegal per se if interstate commerce is utilized, or if such concerted acts have the effect of restraining the free flow of interstate commerce. See Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145; United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951; United States v. McKesson & Robbins, 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209. In these circumstances, the amount or quantity of interstate commerce is unimportant, it is the nature or the tendency of the agreement which the act proscribes. Gamco, Inc. v. Providence Fruit & Produce Bldg., 1 Cir., 194 F.2d 484; United States v. McKesson & Robbins, supra.
 
 
 13
 Judged by these standards, we think the complaint stated a claim upon which relief can be granted under the antitrust laws. The judgment is reversed.