**Charlotte FUSCO and Daniel Boe, Appellants,**

v.

**XEROX CORPORATION, Appellee.**

**No. 81–2123.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1982.

Decided April 28, 1982.

Rehearing Denied May 25, 1982.

Betsy G. Berger, Lincoln, Neb., for appellants.

Gerald P. Laughlin, Craig W. Thompson, Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.

ROSS, Circuit Judge.

On May 28, 1981, appellants, Charlotte Fusco and Daniel Boe, filed an amended complaint,[1] pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15 (1976), against the Xerox Corporation (Xerox) alleging unlawful price discrimination under Section 2(a) of the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13(a) (1976). On June 2, 1981, Xerox filed a motion to dismiss for failure to state a claim pursuant to

---

1. Appellants' initial complaint alleging unlawful price discrimination was dismissed by the district court on April 6, 1981, on the grounds that appellants failed to state a claim upon which relief could be granted under Rule

Fed.R.Civ.P. 12(b)(6). The district court[2] granted the motion to dismiss on September 30, 1981. For the reasons set forth below, we reverse and remand to the district court for further proceedings.

This complaint arose out of appellants' purchase of three used Xerox 800–type word processing machines on May 9, 1980, for $14,416.27. The equipment had been previously owned by another individual, Gloria Melbye, who had purchased the word processors from Xerox under an installment sales contract. According to the appellants, prior to purchasing the equipment, they had priced similar equipment for sale by Xerox and had been advised by Xerox that new 800-type word processors would cost $5,500 per unit and that a new 850-type word processor (a more advanced machine) would cost $12,000 per unit. Gloria Melbye assigned her installment contract to the appellants, and Xerox released Melbye from any further obligations under the contract. After this agreement was executed, appellants allegedly learned that Xerox was selling the same 800-type model in new condition to favored customers for only $2,500 and was selling the more advanced 850-type model to favored customers for $7,000.

The key question upon which this case turned in the district court, as well as the question facing this court on appeal, is whether or not under the facts alleged in this case appellants were "purchasers" within the meaning of the Robinson-Patman Price Discrimination Act. The district court concluded that the plaintiffs could not prove under any set of facts that they were "purchasers" for purposes of the Act and that the agreement itself, repeatedly couched in terms of an assignment, contradicts the appellants' allegation that a new sale occurred between Xerox and the appellants.

In reviewing the district court's conclusion it must be remembered that the court is constrained by a stringent standard in passing on a Rule 12(b)(6) motion to dismiss. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief [citations omitted]." *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

The Robinson-Patman Act provides in relevant part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different *purchasers* of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a) (emphasis added).

There is nothing technical or talismanic about the term "purchaser." "The term

---

12(b)(6) of the Federal Rules of Civil Procedure.

2. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing." *Shaw's, Inc. v. Wilson-Jones Co.*, 105 F.2d 331, 333 (3d Cir. 1939). "Moreover, no single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a discrimination." *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219 (1947). " '[T]here must be actual sales at two different prices to two different actual buyers.' " *M. C. Manufacturing Co. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1065 (5th Cir. 1975), *quoting Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 924 (5th Cir. 1964), *cert. denied*, 379 U.S. 965, 85 S.Ct. 659, 13 L.Ed.2d 559 (1965). Thus, a sale at one price plus either an offer to sell at a higher price or a refusal to sell at any price is generally thought not to violate the Act. *Id.* at 1065 n.11; *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 294 (7th Cir. 1974). *See generally* A.B.A. Antitrust Sec., Monograph No. 4, *The Robinson-Patman Act: Policy and Law Vol. 1*, 50–51 (1980). Nevertheless, it has also been held that an established customer who is currently purchasing one type of goods at a higher price and is denied the right to buy a lower-priced good of "like grade and quality" which is being sold to a competitor can sue under the Act. *See American Can Co. v. Bruce's Juices*, 187 F.2d 919, 924 (5th Cir. 1951).

The appellants in the present case allege that they are "purchasers" of the 800-type word processing machines because despite the assignment terminology in their agreement, the agreement constitutes a novation, i.e., a recission of the original sales agreement between Melbye and Xerox and the creation of a new sales agreement between appellants and Xerox.[3] In addition, appellants allege that at the time they purchased the 800-type used equipment Xerox was selling the same equipment in new condition for discriminatory prices in Minneapolis, Minnesota, Atlanta, Georgia, and other locations.

The agreement under which appellants acquired the equipment was incorporated into the complaint and provided in essence that appellants as assignees wished to acquire the equipment from the assignor (Melbye) and that the assignor was willing to assign its rights under its installment sales contract with Xerox to the assignee. Therefore, the

> Assignor hereby sells, assigns, transfers and sets over to Assignee all of the Assignor's rights, obligations and interest in and to the Installment Purchase Agreement as and to the extent the same relates to the Equipment. Assignee agrees to accept and perform all rights, obligations and interest set forth in said Xerox Installment Purchase Agreement. * * * It is expressly agreed, that notwithstanding anything herein contained to the contrary (a) Assignor shall at all times remain liable to the Seller under the Purchase Agreement to perform all obligations of the buyer * * * and (b) the exercise by the Assignee of the rights assigned hereunder shall not release the Assignor from any of its duties or obligations to the Seller under the Purchase Agreement. * * *

Nevertheless, in an attachment to the assignment agreement entitled "Consent and Agreement" it was provided that Xerox consents to the assignment and "releases the Assignor and agrees to look solely to the Assignee" for performance of the Installment Purchase Agreement.

In its memorandum the district court emphasized the assignment terminology, the provision that the assignor remained liable to Xerox under the purchase agreement, and did not comment on the subsequently executed "Consent and Agreement" releasing the assignor. The court concluded that title passed from the assignor rather than Xerox and that there was nothing in the

---

**3.** In their amended complaint appellants alleged that the agreement "is in the form of an assignment, but is in substance a new contract as between Plaintiff Boe and Defendant Xerox."

agreement from which it can be inferred that any price negotiations took place between Xerox and plaintiff.[4]

We believe that the district court may have gone too far into the merits of this case, overlooked a critical provision of the agreement, and allowed facial form to predominate over plausible substance in reaching its conclusion that there were not any set of facts under which appellants could show that they were "purchasers" under the Act. Appellants contend that since the original Purchase Agreement between Gloria Melbye and Xerox prohibited any assignment of the contract, a new agreement between Xerox and the appellants had to be reached in order for the sale to take place. Furthermore, general principles of contract law support appellants' contention that the assignment and release amounted to a novation, i.e., a new contract. The Restatement of the Law, Contracts (2d) § 280 (1981) states that: "A novation is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty." Section 279 of the Restatement defines a substituted contract as "a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty. The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty."[5]

Viewing the facts in this case in light of these general principles, if Xerox not only consented to the assignment, but also released the original obligor from any obligation under the original purchase agreement as it appears to have done, it seems clear that a novation occurred. The facts that title to the equipment may have passed from Xerox to the original obligor (Gloria Melbye), and that the agreement states that Gloria Melbye is the seller, cannot alter the substance of the transaction that allegedly occurred. It must be noted that under such a novation Gloria Melbye would apparently no longer have any rights or obligations with respect to either Xerox or to the appellants. Thus, Xerox's only recourse in the event of failure of performance of the agreement would be against the appellants. Conversely, it would appear that, apart from remedies against the assignor based on implied warranties, see Restatement of Law, Contracts (2d) § 388, the appellants' only recourse on the contract would be against Xerox. In these circumstances it may be difficult not to conclude that legally the assignment and release was the equivalent of a sale and purchase under the Act.

Nevertheless, we need not rest our decision on such a determination. We do not believe that the written agreement by its very terms precludes the possibility that plaintiffs could prove that Xerox was an active and primary participant in the sale of

---

**4.** In support of its decision the district court apparently relies on *Bay City-Abrahams Bros., Inc. v. Estee Lauder, Inc.*, 375 F.Supp. 1206 (S.D.N.Y.1974). At best, this case is only remotely apposite to the instant case. The plaintiff in *Bay City* purchased a department store (including store inventory), which had been selling Estee Lauder cosmetics. Estee Lauder ceased selling to the department store and sold its products to another department store. The plaintiff sued Estee Lauder for failure to furnish promotional services and allowances provided by Estee Lauder to other retailers. *See* 15 U.S.C. §§ 13(d), 13(e). The plaintiff argued that it was a "customer" or "purchaser" under the Act because it received and paid for Estee Lauder inventory ordered by and shipped to the store's former management. The court granted Estee Lauder's motion for summary judgment grounded on failure to state a claim because the plaintiff was not a "purchaser" under the

Act. *Id.* at 1218. We note that there is no indication that *Bay City* involved either an assignment of a contract or a release of an assignor from his duty to the obligee or a novation of the original contract.

**5.** Comment b to § 280 makes clear that this principle applies to a novation: "A novation discharges the original duty, just as any other substituted contract does, so that breach of the new duty gives no right of action on the old duty." It has also been pointed out that "the mere assumption of a duty by a new obligor with the consent of the obligee is not a novation since no duty is discharged by such an assumption unless the obligee also agrees to discharge the original obligor." J. Calamari & J. Perillo, Contracts § 768 n.74 (1977) (*see* cases cited therein.)

the used 800-type equipment, rendering it a seller and the appellants "purchasers" within the usual meaning of these words. Appellants should at least have the opportunity to show, for example, that Xerox instigated the sale, that Xerox salesmen were involved in the transaction, or that Xerox in some other way controlled the sale of the used 800-type word processors.[6]

We conclude that appellants have sufficiently stated a cause of action in light of their allegations in the amended complaint that: (1) a new contract between Xerox as seller and appellants as purchasers occurred with regard to the three used 800-type word processing machines, and (2) that Xerox was contemporaneously selling new 800-type equipment at a substantially lower price.[7] However, appellants also contend that they should be viewed as purchasers under the Act with respect to the new 850-type word processing equipment. The district court concluded that since appellants did not actually purchase the 850-type equipment and Xerox had not actually refused an offer to purchase the 850-type equipment at the same price it was selling that equipment for in other cities, appel-

lants could not be viewed as "purchasers" with regard to the 850-type equipment.

We believe that the district court misconstrued appellants' contentions. Our reading of appellants' complaint and arguments leads us to conclude that appellants are arguing that they are actual "purchasers" of 800-type equipment and that Xerox was offering to sell equipment of "like grade and quality," the 850-type equipment, at discriminatory prices. Nevertheless, even under this reading of the complaint, we must conclude that appellants have failed to state a cause of action with respect to the 850-type equipment. As we noted earlier in this opinion, in order to state a claim under the Robinson-Patman Price Discrimination Act, at least two sales must be alleged to different purchasers at different prices. *Bruce's Juices v. American Can Co., supra*, 330 U.S. at 755, 67 S.Ct. at 1020; *M. C. Manufacturing Co. v. Texas Foundries, Inc., supra*, 517 F.2d at 1065. Mere offers to sell are not sufficient. Therefore, even if the court accepts as true appellants' allegations that they were purchasers of the 800-type equipment and that this equipment was of "like grade and quality" as the 850-type equipment,[8] the appellants have

---

**6.** These examples are not to be viewed as exhaustive, but only suggestive of facts which might support the conclusion that what in substance occurred was a new sale by Xerox to the appellants as purchasers within the Act.

**7.** Appellants' amended complaint essentially alleges that defendant Xerox was selling the 800-type machines new at $2,500 in Minneapolis, Minnesota, and was selling the same new machines in Atlanta, Georgia, and other geographic locations at a discriminatory price. We, like other courts which have considered similar factual allegations, conclude that these allegations are sufficient under the Robinson-Patman Act. *See Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1388–89 (10th Cir. 1980); *J. W. Burress, Inc. v. JLG Indus., Inc.*, 491 F.Supp. 15, 16 (W.D.Va.1980); *Palmer News, Inc. v. ARA Serv., Inc.*, 476 F.Supp. 1176, 1184 (D.Kan.1979); *Eye Encounter, Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683, 686, 687, 690 (E.D.N.Y.1979).

The liberal rules of pleading embodied in Fed. R.Civ.P. 8 are as applicable to claims in antitrust or price discrimination cases as they are in any other case. *Mountain View Pharmacy v. Abbott Laboratories, supra*, 630 F.2d at 1386;

*New Home Appliance Center, Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957). All that is required is a short, plain statement of facts sufficient to give the defendant fair notice of the basis of the claim, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, in antitrust cases, where the proof is largely in the control of the defendant, *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). In the instant case, further particularization of appellants' allegations of discriminatory sales clearly is attainable through discovery procedures. *See New Home Appliance Center, supra*, 250 F.2d at 884. In the event that appellants fail to uncover facts substantiating the discriminatory sale allegations, summary judgment is available "to avoid expensive trials of frivolous claims." *Id.* at 883 (citations omitted).

**8.** The question of "like grade and quality" is a "threshold finding [of fact] essential to the applicability of § 2(a)" of the Act. *FTC v. Bor-*

failed to state a cause of action in regard to discriminatory pricing of the 850-type equipment because they have only alleged that Xerox was "offering to sell" that equipment at a lower price in other cities.

For this reason we affirm the district court's dismissal of the complaint for failure to state a cause of action with respect to the 850-type equipment. However, since we conclude that the court erred in dismissing the complaint concerning the 800-type word processing equipment, this case is reversed and remanded to the district court for proceedings not inconsistent with this opinion.

*don Co.,* 383 U.S. 637, 639, 86 S.Ct. 1092, 1095, 16 L.Ed.2d 153 (1966).