# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1100

_____

| | | |
|---|---|---|
| In re: AMDOCS Limited Securities Litigation | * | |
| | * | |
| | * | |
| ------------------------ | * | |
| Kerry Chambers, on behalf of himself and all others similarly situated; Excalibur Management Corporation; | * | |
| | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| Jerry Fields, Fields Trust; Epsilon Mutual Funds Management Co., Ltd.; Binmar Investments, Ltd.; Altshuler-Shaham Mutual Fund; | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Plaintiffs-Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| Hindy Taub; | * | Eastern District of Missouri. |
| | * | |
| Plaintiff, | * | [TO BE PUBLISHED] |
| | * | |
| Westgate Alpha Fund, L.P.; Westgate Premier Growth Fund, L.P.; James Nicholson; | * | |
| | * | |
| | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| Myra Swee; Christopher Carmona, on behalf of himself and all others similarly situated; Andrew Schonzeit, on behalf of himself and all others similarly situated; Glen Hubbard, on | * | |
| | * | |
| | * | |
| | * | |
| | * | |

behalf of himself and all others     *
similarly situated; Market Street     *
Securities, Inc., on behalf of itself     *
and all others similarly situated;     *
    *
         Plaintiffs,     *
    *
      v.     *
    *
AMDOCS Limited;     *
    *
        Defendants-Appellees,     *
    *
Bruce K. Anderson; Robert A. Minucci; *
    *
        Defendants,     *
    *
Avinoam Naor; Dov Baharav;     *
    *
        Defendants-Appellees.     *

_____

Submitted: October 19, 2004
Filed: December 2, 2004

_____

Before WOLLMAN, LAY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

-2-

Investors in Amdocs Limited appeal the district court's[1] order dismissing their securities fraud complaint for failure to make a claim upon which relief can be granted. We affirm.

## I

The Defendant, Amdocs Limited (Amdocs), is a publicly-traded company specializing in computer systems for telecommunications firms such as Sprint PCS, Verizon, Nextel, Cingular, British Telecom, Bell Canada, Bell South, and SBC Communication. Jerry Fields is the lead plaintiff for a class of investors (together the Plaintiffs) who lost money by investing in Amdocs' stock during the class period of July 18, 2000 through June 20, 2002. The Plaintiffs' amended and consolidated class action complaint alleges that, in violation of the Securities Exchange Act of 1934 (the Securities Act), Amdocs defrauded the Plaintiffs by: 1) misleading Plaintiffs to believe that Amdocs' customer demand was stronger than it actually was; 2) providing false revenue projections for the third fiscal quarter of 2002; 3) misleading Plaintiffs as to increased business with large telecom customers; and 4) making false statements regarding acquisitions of Clarify and Ceretin. Plaintiffs further allege that Amdocs' CEO, Avinoam Noar, and its CFO, Dov Baharav, are individually liable under the Securities Act as controlling persons. *See* 15 U.S.C. § 78t(a) and 17 C.F.R. § 240.12b-2.

Amdocs made its first public offering of stock in 1998 and thereafter experienced significant growth, reaching annual revenues of roughly $1.5 billion in 2001. During most of the class period, Amdocs published upbeat predictions of its prospects. This is not surprising; Amdocs' revenues grew significantly for the first seven of the eight quarters of the class period. In these predictions, Amdocs touted its "visibility;" a measurement that identifies what percentage of a future period's

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

predicted revenues were attributable to signed contracts, letters of intent, or fixed customer relationships. The percent of sales for a future period that were "visible" were sales that Amdocs had already sold. During the class period, securities analysts and members of the media asked Amdocs' CEO and CFO about how well the company was weathering the high-tech recession. Until approximately April of 2002, Amdocs represented that its sales continued to expand, and that demand for Amdocs' products was not being negatively affected by the high-tech recession.

At various times during the class period, Amdocs and at least one independent securities analyst issued cautionary statements regarding Amdocs' business prospects. On July 11, 2001, an analyst from Morgan Stanley lowered Amdocs' stock rating from "strong buy" to "outperform," and opined that the "rapidly degrading carrier spending environment" would negatively impact Amdocs. On December 27, 2001, Amdocs filed its annual 20F report with the Securities and Exchange Commission (SEC) detailing Amdocs' historical performance and also providing projections of future results. In this filing, Amdocs identified "business risks" that the company could potentially face. Specifically, Amdocs identified that its sales were closely tied to the "global communications market," that the slow-down in spending has lengthened Amdocs' typical sales cycle, and that this trend could accelerate and "result in slower revenue growth rates" in the future. In a press release on April 23, 2002, Amdocs lowered its 2002 Q3 revenue projections by $60 million, or twelve and one-half percent. Later that day in a telephone conference with security analysts, Amdocs cautioned that the softening of demand reflected "a more prolonged and severe market deterioration than had been previously anticipated."

For the first seven of the eight quarters in the class period, Amdocs' revenues grew steadily. It was not until the last quarter of the class period that revenues actually declined. On June 20, 2002, Amdocs reported its first ever decline in quarterly revenue. This quarterly revenue number of $380 million was ten percent below the already-lowered projection of $420 million. The following day, Amdocs'

stock dropped forty percent on heavy trading volume; approximately four times higher than average. This suit followed.

The district court dismissed Plaintiffs' complaint on Amdocs' 12(b)(6) motion, holding that: 1) Amdocs' representations relating to customer demand were immaterial as a matter of law; 2) Amdocs' revenue projections for the third fiscal quarter of 2002 were forward-looking and protected by the "safe harbor" clause of the Private Securities Litigation Reform Act of 1995 (the Reform Act), *see* 15 U.S.C. § 78u-5(c); 3) representations of business with large telecom customers were immaterial as a matter of law; and 4) statements related to the acquisitions of Clarify and Certen simply were not actionable under the Securities Act. The district court dismissed the Plaintiffs' complaint with prejudice without reaching the issues of heightened pleading requirements of particularity and scienter required under the Reform Act. *See* 15 U.S.C. § 78u-4(b). Plaintiffs now appeal the district court's dismissal of their complaint related to Amdocs' representations of customer demand and statements of visibility, but abandon the remainder of their complaint.

The following are examples of statements that the Plaintiffs' complaint relies upon to establish its securities fraud claim:[2]

> Management believes that demand for the company's systems remains strong and is growing in all business areas. (November 2, 2000 press release);

---

[2]The Plaintiffs have not appealed the district court's dismissal of those portions of their complaint relating to: revenue projections for the period of April 23, 2002, through May 22, 2002; statements relating to increased business with large telecom customers; and statements relating to the acquisitions of Clarify and Certen. Accordingly, the volumes of statements relevant to those unappealed claims are not reproduced here.

Amdocs continues to demonstrate excellence in its growth . . . Management believes that the changing needs of communications providers are creating additional demand for Amdocs' market-leading customer care and billing solutions. "This growing demand is manifest in all segments - mobile, wireless and IP - and in all regions." (Naor quoted in January 23, 2001 press release);

We had 13 new business wins during the quarter, an unprecedented number for Amdocs. From our point of view, we don't see any slowdown. I would say a little bit the other way around. (Naor quoted in April 23, 2001 press release).

We continue to see demand for our products and services around the world and across our lines of business. We are optimistic regarding future deal flow as well. In addition, our existing customers are continuing with their system enhancement and expansion plans. We don't feel any pressure from our existing customers to decrease the level of service that we are providing today. We are very proud to have high visibility and we believe that we will continue to have high visibility. (Naor speaking on a July 11, 2001 conference call);

Even in today's environment, we are experiencing strong demand for our offerings. Our ability to achieve stability and growth in the current business environment is based on our long-term relationships with the market leaders, which generate a solid, constantly expanding flow of recurring revenues. (Naor quoted in a November 6, 2001 press release);

Regarding the projections for next year, given the visibility that we have . . . remember that the significant part of what we are going to do is out of our carrying revenue and existing customers so actually we built it from the bottom. It's not just a statistical number. It's not only a marketing and sales expectation, it's based on pipeline, on names, on plans that we're working on with our customers. So the numbers are the result of quite a detailed, solid work and we feel comfortable with those numbers. (November 2, 2000 press release);

## II

The Reform Act modifies the standard 12(b)(6) analysis in two ways: First, while we assume all factual allegations in the complaint are true, the Reform Act requires us to disregard catch-all or blanket assertions that do not live up to the particularity requirements of the statute. *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001). Second, even though the plaintiff is entitled to all reasonable inferences, the Reform Act requires a securities fraud claim to plead allegations that collectively add up to a strong inference of scienter.[3] *Id.* Congress adopted these special pleading standards in the Reform Act to curb abusive securities fraud litigation. *In re Navarro Corp. Sec. Litig.*, 299 F.3d 735, 741 (8th Cir. 2002). Dismissal of a securities fraud complaint on a 12(b)(6) motion for failure to satisfy the heightened pleading requirements of the Reform Act is reviewed *de novo*. *Florida State Bd. of Admin.*, 270 F.3d at 661.

To present an actionable claim for securities frauds, the alleged misstatements must be material. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (citation omitted). A complaint that alleges only immaterial misrepresentations presents an "insuperable bar to relief" and is properly dismissed. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982). While materiality is generally a question of fact reserved for the jury, alleged misrepresentations are immaterial as a matter of law where a court determines that no reasonable investor could have been swayed by the alleged misrepresentation. *Parnes*, 122 F.3d at 546.

---

[3]The Reform Act does not use the language "scienter." Instead, it refers to "the required state of mind." Our cases have made it clear that the required state of mind is scienter. *See Florida State Bd. of Admin.*, 270 F.3d at 653 n.7; *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 742; *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 826 (8th Cir. 2003).

Plaintiffs argue that the district court erred when it found that Amdocs' statements regarding customer demand were too vague and non-specific to contain any useful information upon which a reasonable investor would rely, and thus were immaterial, as a matter of law, in the total mix of information available. While we do not agree that the statements were too vague to be actionable considering the context in which they were made, we agree with the district court's judgment that they were immaterial as a matter of law because they were accompanied by cautionary statements that bespoke caution.

A misrepresentation or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988). Alleged misrepresentations can be immaterial as a matter of law if they: 1) are of such common knowledge that a reasonable investor can be presumed to understand them; 2) present or conceal such insignificant data that, in the total mix of information, it simply would not matter; 3) are so vague and of such obvious hyperbole that no reasonable investor would rely upon them; or 4) are accompanied by sufficient cautionary statements. *Parnes*, 122 F.3d at 546-48. Cautionary language which relates directly to that which the Plaintiffs claim to have been misled, if sufficient, renders the alleged misrepresentation or omissions immaterial as a matter of law. *Id.* at 548.

As early as December 27, 2001, Amdocs began issuing cautionary statements about market erosion in the telecom industry. On April 23, 2002, Amdocs lowered its revenue projections, and again referenced its December 27, 2001 SEC 20-F and the warnings it contained. That same day, Amdocs conducted a conference call with securities analysts and specifically discussed the increasing impact of softening customer demand on Amdocs' revenues.

We did experience increased timing delays during the quarter. While there is a lot of interest in the market, carriers are being very careful about committing to new capital expenditures. Several deals that we expected to sign during the quarter are still being finalized or awaiting approval. We see more decisions being made in a phased approach, with customers committing only to those parts of projects that are immediately essential. This reflects a more prolonged and severe market deterioration than had been originally anticipated . . . . (Naor, April 23, 2002 conference call with securities analysts.)

The gravamen of the Plaintiffs' claim is that Amdocs' representation of strong customer demand in conjunction with growing revenue projections and high visibility numbers led them to believe that Amdocs was successfully avoiding the high-tech recession. Put another way, the favorable representations qualified the doom and gloom warnings. Under the bespeaks caution doctrine, however, Amdocs merely needed to issue sufficient warnings that "relate[d] directly to that which the plaintiffs have been misled." *Parnes*, 122 F.3d at 548. Amdocs' December 27, 2001 and April 23, 2002 warnings appear to have done just that. The warnings put Plaintiffs on notice that demand had softened and that Amdocs' customers were in fact altering their purchasing patterns with Amdocs. These statements related directly to an erosion in Amdocs' customer demand. Accordingly, Amdocs' statements regarding customer demand were immaterial as a matter of law.

Because we affirm the district court's dismissal of the Plaintiffs' cause of action against Amdocs, we also affirm the dismissal of the Plaintiffs' causes of action against the individual Defendants Avinoam Noar and Dov Baharav as well.

We also concur in the concurring opinion of Judge Wollman relating to the pleading standards and scienter. We adopt his concurrence on an alternative basis. The order of the district court is AFFIRMED.

WOLLMAN, Circuit Judge, concurring.

I am not convinced that the "bespeaks caution" doctrine renders all of the challenged statements immaterial as a matter of law. It is clear, however, that the plaintiffs' complaint did not meet the pleading standards for falsity and scienter required by the Private Securities Litigation Reform Act of 1995 (Reform Act). Because we may affirm the district court's judgment on any basis supported by the record, Migliaccio v. K-Tel Int'l, Inc. (In re K-Tel Int'l, Inc. Sec. Litig.), 300 F.3d 881, 889 (8th Cir. 2002), I would affirm based upon the plaintiffs' failure to satisfy the Reform Act's pleading standards without reaching the closer question of the materiality of the alleged misstatements.

Congress adopted two heightened pleading standards unique to securities cases when it enacted the Reform Act. The first requires that a plaintiff's complaint show falsity by specifying each allegedly misleading statement and the reasons why each statement is misleading. 15 U.S.C. § 78u-4(b)(1); Kushner v. Beverly Enters., Inc., 317 F.3d 820, 826 (8th Cir. 2003). The second requires that the complaint show scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); Kushner, 317 F.3d at 826. The Reform Act requires that the complaint be dismissed if either of these standards is not met. 15 U.S.C. § 78u-4(b)(3); Kushner, 317 F.3d at 826.

Mere allegations of fraud are insufficient to satisfy the heightened pleading standard for falsity. Chen v. Navarre Corp. (In re Navarre Corp. Sec. Litig.), 299 F.3d 735, 742 (8th Cir. 2002). Instead, a complaint must indicate why the alleged misstatements "would have been false or misleading at the several points in time in which they were made" in order to satisfy the standard. Id. at 743 (quoting Fischer v. Vantive Corp. (In re Vantive Corp. Sec. Litig.), 283 F.3d 1079, 1086 (9th Cir. 2002)). The facts contained in the complaint must *necessarily* show that the defendants' statements were misleading. In re Vantive Corp., 283 F.3d at 1087.

-10-

The complaint in this case fails to show that the defendants' statements were misleading when made. After detailing each challenged statement by the defendants, the complaint generally alleges that the statements were false and misleading. See Compl. at 27, 35, 40, 47, 52, 64, 75, 82-83. The complaint also describes problems on individual projects staffed by Amdocs and a number of general impressions shared by lower-level employees and contractors. See, e.g., id. at 27-29 (problems at SBC site), 35-36 ("general feeling" that deals weren't being closed), 41 (decline in European region revenue from one quarter to the next). At no point, however, does the complaint allege facts that are necessarily inconsistent with the defendants' representations that demand was "strong" or that visibility was "high." At best, the facts alleged show that one or two projects were not going well, that one geographic sector of Amdocs' business was underperforming, that some offices were experiencing layoffs, and that some employees were unhappy. Without any allegations regarding the effect that these compartmentalized conditions had on the *overall* demand and visibility experienced by Amdocs, the plaintiffs' complaint fails to meet the Reform Act's heightened standard for falsity.

The complaint also fails to satisfy the Reform Act's heightened standard for scienter. Although Congress did not codify any particular methods of showing the required strong inference, inferences of scienter will usually survive a motion to dismiss only if they are both "reasonable and strong." Kushner, 317 F.3d at 827. While scienter is normally a question of fact for the jury, the complaint must provide a factual basis for allegations of scienter. In re K-Tel, 300 F.3d at 894.

The plaintiffs allege that a strong inference of scienter has been established in this case for two reasons: (1) defendants Naor and Baharav knew or recklessly disregarded contemporaneous facts indicating that demand was not "strong" and that visibility was not "high"; and (2) insider trading activity during the class period demonstrates the defendants' motive to make fraudulent statements. Recklessness is a basis for a strong inference of scienter where defendants make statements when they

know or have access to information suggesting that the statements were inaccurate. In re Navarre Corp., 299 F.3d at 746. In addition, insider trading activity may give rise to an inference of scienter when the trading pattern during the class period is "unusual." In re K-Tel, 300 F.3d at 895-96.

Here, neither of the plaintiffs' allegations provides a basis for a "strong inference" of scienter. The omission of any facts in the complaint to show that the defendants' statements were necessarily false prevents the plaintiffs from showing that the defendants knew or recklessly disregarded such facts. Furthermore, the investors' allegations that certain "big bosses" in the company told employees that Amdocs was in dire financial straits, e.g., Compl. at 64, and that "Amdocs management in Israel" pressured certain executives, e.g., Compl. at 35, fall short of an allegation that Naor and Baharav themselves knew of any information that would render their statements false when made. See Kushner, 317 F.3d at 828 (assertions that someone who had knowledge of falsity of certain statements "reported" to defendant were not specific enough to support a strong inference of scienter). Although the plaintiffs allege that Naor had some knowledge of purportedly false sales forecasts prior to his statements in April of 2002, see Compl. at 79, this alleged knowledge is not inconsistent with the content of the April 2002 statement, i.e., that Amdocs' demand was "still there."

Finally, the plaintiffs may not rely on the defendants' insider trading activity to raise a strong inference of scienter. Even assuming *arguendo* that the stock sales by independent trusts connected to Amdocs resulted in massive personal benefit to Naor and Baharav, the investors have failed to include any allegations relating to the defendants' prior trading history or to the number of total shares held by each defendant. Without such allegations, we cannot determine whether or how the trading activity was "unusual." In re K-Tel, 300 F.3d at 895-96. The investors' conclusory allegations that the insider sales were suspicious thus fail to meet the scienter pleading standard. Id.

Accordingly, I concur in the result reached by the majority.

_____